## Marshall, Appellant, v. Pilots' Association.

*Corporations—By-laws—Contract.*

The office of a by-law is to regulate the conduct and to define the duties of the members towards the corporation and each other. So far as its provisions are,in the nature of a contract, the parties thereto are the members of the association, as among themselves, or the corporation on one side, and its individual members on the other.

An association can enact alterations in the by-laws, of a mere regulative kind or which are not inconsistent with the fundamental scheme of the incorporation, but in the line of its original purpose, conductive to perfect equality of benefits and burdens, though they affect (without

destroying) vested rights, so long as the alterations relate to the duties and rights springing from the contract of membership, and not from other purely contract relations; because, on all questions of the rights and duties incident to membership every member, by his fundamental contract of membership, pledges his assent in advance to every lawful rule adopted by the majority in furtherance of the common objects.

*Voluntary associations—By-laws—Amendment of by-laws—Vested right —Pilot's Association.*

A voluntary association of pilots adopted the following by-law: "A member losing his license for any other cause than intoxication shall receive half pay until reinstated." A member in active service and good standing became disabled by reason of impairment of his eyesight, and could no longer pursue his calling. His license was revoked and he was accorded half pay. Subsequently the by-law was amended so that it would read, " A member losing his license through accident to the vessel, or through any other cause, except intoxication, shall receive one half pay until reinstated. A member losing his license for not being capable of following his business shall receive fifty dollars per month." *Held*, that the association had the right to amend the by-law, and that the disabled member was bound by the amended by-law.

Argued Oct. 17, 1901.    Appeal, No. 119, Oct. T., 1901, by plaintiff, from judgment of C. P. No. 1, Phila. Co., Dec. T., 1900, No. 909, on case stated in case of James W. Marshall v. The Pilots' Association for the Bay and River Delaware. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER and W. D. PORTER, JJ.    Affirmed.

Case stated to determine the validity of an amended by-law of the Pilots' Association.

The case stated was as follows:

That the plaintiff, James W. Marshall, was duly licensed an active pilot of the bay and river Delaware, from 1857 until June 29, 1899, holding a " first rate " branch.

That on or about the first Tuesday of December, 1896, there was formed and organized a voluntary association, known as the " Pilots' Association for the Bay and River Delaware," which was and is composed of pilots licensed under the laws of the states of Pennsylvania and Delaware, and having its office at No. 319 Walnut street, in the city of Philadelphia.

The objects of this association are for the mutual benefits of its members; to equalize the earnings of the pilots; and to provide benefits for sick and disabled members, etc.

That said plaintiff became one of the original members of the association, and still continues a member.

That the active members of the said association make regular returns thereto of all moneys earned by said members, which earnings are distributed at the end of each month among said members, less an amount sufficient to cover expenses, and a certain percentage set aside each month to create a sinking fund, share and share alike.

At the time the plaintiff became a member of said association one of the by-laws thereof was as follows:

"Rule 14. A member losing his license for any other cause than intoxication shall receive half pay until reinstated."

While continuing a member of said association in active service and good standing, complying with all its laws and regulations, and entitled to his full share of the profits and earnings thereof, the plaintiff became disabled by reason of impairment of his eyesight, and could no longer pursue his calling. Accordingly on June 29, 1899, at a special meeting of the pilot commissioners for the state of Delaware, at which the plaintiff was present and concurring, his license as a pilot for the said cause was revoked. Thereupon the Pilots' Association accorded him the half pay provided for in "Rule 14," and he received the same from July, 1899, until March, 1900, inclusive, being one half the amount awarded and paid each month to the pilots in active service.

The plaintiff being in the sixty-seventh year of his age, and his disability being permanent, the said defendant association, on or about April 9, 1900, amended "Rule 14" of the by-laws, conformably to the constitution, so as to read as follows: "A member losing his license through accident to the vessel, or through any other cause except intoxication, he shall receive one half pay until reinstated.

"A member losing his license for not being capable of following his business shall receive Fifty ($50.00) dollars per month."

The effect of the said amendment was to diminish the allowances or benefits previously paid to the plaintiff under Rule 14, and subsequent to the adoption of the said amendment the association declined to continue to pay the plaintiff the half pay provided by Rule 14, and offered him the sum of $50.00 per

month, the amount provided by the said amended by-law, which amount of $50.00 the plaintiff refused and refuses to accept.

That under plaintiff's contention there is due him by the defendant the total sum of $997.14, with interest on the several amounts thereof from the respective dates upon which the said items became due, as follows, to wit:

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Half pay for the month of April, 1900 | | | | | | | | $ 97.78 |
| " | " | " | " | " | " | May, | " | 135.64 |
| " | " | " | " | " | " | June, | " | 113.39 |
| " | " | " | " | " | " | July, | " | 122.23 |
| " | " | " | " | " | " | Aug., | " | 107.50 |
| " | " | " | " | " | " | Sept., | " | 103.68 |
| " | " | " | " | " | " | Oct., | " | 114.04 |
| " | " | " | " | " | " | Nov., | " | 101.47 |
| " | " | " | " | " | " | Dec., | " | 102.41 |
| Total | | | | | | | | $997.14 |

If the court shall be of the opinion that the plaintiff is entitled to receive half pay from April to December, 1900, inclusive, then judgment is to be entered in his favor for $997.14, with interest on the several items thereof from the respective dates when they became due; otherwise judgment to be entered for the defendant; the costs to follow the judgment, and either party to have the right to appeal.

The court entered judgment for defendants on the case stated.

*Error assigned* was in entering judgment for defendant on case stated.

*Edgar J. Pershing* and *Horace G. Knowles,* for appellant.—A corporation (or mutual association) has not the power by laws of its own enactment to disturb or divest rights which it has created, or to impair the obligation of its contracts, or to change the responsibilities to its members, or to draw them into new and distinct relations, and all by-laws attempting to do so are inoperative and void: 1 Bacon on Benefit Societies, p. 310; Hobbs v. Iowa Mut. Benefit Assn., 82 Iowa, 107, 47 N. W. Repr. 983; Gundlach v. Germania Mechanics' Assn., 4 Hun (N. Y.) 339; Kent v. Quicksilver Mining Co., 78 N.

Y. 159; Becker v. Farmers' Mut. Fire Ins. Co., 48 Mich. 610; 14 N. W. Repr. 874; St. Patrick's Male Beneficial Society v. McVey, 92 Pa. 510; Becker v. Berlin Beneficial Socety, 144 Pa. 233.

*Henry Flanders*, of *Flanders & Pugh*, for appellees.

OPINION BY ORLADY, J., January 21, 1902:

The voluntary association known as the Pilots' Association for the Bay and River Delaware, is composed of duly licensed pilots and has as its objects the mutual benefit of its members; equalizing the earnings of pilots; and providing for sick and disabled members, etc.  The plaintiff was one of the original members of the association which was organized in December, 1896, and this controversy arises upon the interpretation and effect to be given to a certain by-law or rule of the association, viz: "Rule 14. A member losing his license for any other cause than intoxication shall receive half pay until reinstated." While the plaintiff was in active service and good standing "he became disabled by reason of impairment of his eyesight and could no longer pursue his calling."

On June 29, 1899, his license was regularly revoked by proper authority for the cause as above stated, and under Rule 14 the defendant accorded and paid him half pay from July, 1899, until March, 1900, which was one half the amount awarded and paid each month to the pilots in active service.  The case stated shows that on April 9, 1900,—" the plaintiff being in the sixty-seventh year of his age and his disability being permanent,"—the association, conformably to the constitution, amended Rule 14, so as to read, "a member losing his license through accident to the vessel, or through any other cause except intoxication, he shall receive one-half pay until reinstated.  A member losing his license for not being capable of following his business shall receive fifty ($50.00) dollars per month." The amended by-law defined the status of a member not mentioned in the original.  It would be unreasonable to hold that the original by-law was intended to provide for other than cases of temporary disability.  Under it a member could be reinstated in active service and thus be liable to perform the duties of a member and be entitled to the earnings of the association which

would be distributed at the end of each month among the members. After June 29, 1899, the plaintiff could not be reinstated for the reason that, with his consent, his license was revoked by the pilot commissioners because of a physical disability which made it impossible for him any longer to pursue his calling as a pilot.

The office of a by-law is to regulate the conduct and to define the duties of the members towards the corporation and each other. So far as its provisions are in the nature of a contract, the parties thereto are the members of the association, as among themselves; or the corporation on one side, and its individual members on the other: Flint v. Pierce, 99 Mass. 68; s. c. 96 Am. Dec. 691. It must be conceded that a by-law or regulation is a rule for future action, and an association which is authorized to make such by-laws as may be necessary to secure the objects for which it is created, has power to change them by a legal amendment when necessary to carry out such objects. It must also be conceded that the power to amend cannot be so exercised as to impair any right that has become vested by virtue of the by-law. The articles of association and by-laws existing at the time when membership begins are in many respects to be regarded as establishing between the association and members certain fundamental rights. It is essential to the control and disposition of conditions which cannot be anticipated when an association is formed, that it should have authority to provide for them by the amendment or repeal of a by-law, or by enactment of a new one. The power to repeal and amend is an incident to the power to enact: Com. v. Lancaster, 5 Watts, 152.

An association can enact "alterations in the by-laws, of a mere regulative kind or which are not inconsistent with the fundamental scheme of the incorporation, but in the line of its original purpose, conducive to perfect equality of benefits and burdens, though they affect (without destroying) vested rights, so long as the alterations relate to the duties and rights springing from the contract of membership, and not from other purely contract relations; because, on all questions of the rights and duties incident to membership every member, by his fundamental contract of membership, pledges his assent in advance to every lawful rule adopted by the majority in furtherance of

the common objects : " 7 Thompson on Corporations, sec. 8769 ; Supreme Lodge Knights of Pythias v. Knight, 117 Ind. 489, 20 N. E. Repr. 479 ; s. c., 3 L. R. A. 409.    The plaintiff contends that the by-law (Rule 14) was a part of his contract, unalterable except with his consent, and relies on St. Patrick's Male Beneficial Society v. McVey, 92 Pa. 510, and Becker v. Berlin Beneficial Society, 144 Pa. 233.

In the latter case, which distinguishes the earlier one, the status of the plaintiff was definitely fixed, and, to use the words of the decision, " the defendant society became liable to the plaintiff for dues at the rate of two dollars and fifty cents per week, and after it had paid them for more than one year it proceeded to amend its by-laws so as to reduce the amount of benefits."    It was held that this could not be done, as " he was a creditor whose rights had previously attached, and those rights cannot be swept away by such a scheme as this by-law."    The most extreme application of that case to the present one would be that the plaintiff had a vested right to receive the half pay allowance under Rule 14 while he was temporarily disabled ; but when the new degree of disability, which equally affected all in that class, was determined and he was placed in the class of the permanently disabled, he was bound by the designation in the amendment.    Having received half pay to the date of the amendment he is bound thereafter by the changed allowance.    It is not reasonable to hold, that where an association at its formation has not anticipated all possible contingencies necessary to its successful government, that the association must follow the original lines even to inevitable bankruptcy by paying improvident allowances rather than by preserving the association ; but it should carry out the purposes of its formation by the enactment of a reasonable amendment to meet the overlooked contingency.    To justify interference by the courts and warrant the overthrow of a by-law, it must be shown that there has been an abuse of power or that the by-law is unreasonable.

This new condition was established by the plaintiff's consent to the revocation of his license by the pilot commissioners by reason of his permanent disability so that he " could no longer pursue his calling."    No one has a right to presume that by-laws will remain unchanged.    It is not claimed that the organic law

of the association forbids the amendment.    The permanence and welfare of the pilot's association required that there should be some special provision made for those who became permanently disabled.    It would be unreasonable and inequitable that the permanently disabled should receive the half pay which is produced entirely by the young and active members.    Fifty dollars per month was considered a reasonable contribution from the funds of the association to such permanently disabled members.    It can readily be seen that on the half pay basis and with the increasing numbers of aged and disabled members the resources of the association would be so drained as to destroy its object, and new pilots would be deterred from assuming such a liability in becoming members.

It was held in McCabe v. Father Matthew Total Abstinence Society, 24 Hun (N. Y.), 149, that when at the time of contract of membership there existed a by-law providing $5.00 a week for sick benefits, that a subsequent by-law, passed before the sickness of a member, reducing the amount of benefits, was valid and binding.    As was said in Supreme Lodge v. Knight, supra, " the change from one plan to the other was not an unreasonable exercise of power, because it may well be that the system originally adopted, which gave no heed to age, was so infirm as to be incapable of long enduring; it was not arbitrary, because the by-laws were rightly amended and a desire to promote the welfare of the association brought about the change ; it was not. the repudiation of a debt, because the right to the avails of the association provided for by the contract was not taken away; it was not the destruction of a vested right, because the power to amend was, as reserved, a part of the contract from which the right emanated."    The liability to be placed in the new class of permanently disabled pilots applied to all members on equal terms.

It may sometimes happen that the interests of an individual, or of a few individuals may be impaired by such amendments, but it is the duty of the association to protect the interests of the many rather than of the few.    By this amendment of Rule 14 the active pilots have assumed an obligation which was neither specified nor provided for in the original by-laws, and have agreed to allow their permanently disabled comrades out of their own earnings at the rate of $600 per year.    In the light

of the fact that the sole source of income of the association is from the hazardous and skilled labor of the licensed active pilots —with out whom there could not be any association of this kind—the provision seems to be generous and reasonable.

The judgment is affirmed.

RICE, P. J., dissenting :

The appellees' contention is that when reinstatement became impossible, Rule 14 did not apply. As that was the only rule in force at the time the plaintiff became disabled and lost his license, it would follow that if he was permanently disabled he could receive nothing. I cannot concur in that construction of the rule, and therefore cannot concur in the judgment. The object of the association was to provide benefits for sick and disabled members. Rule 14 was adopted to carry out this purpose. It clearly provided for the case of disabled members and neither by express terms nor by necessary implication did it exclude one whose disability might be permanent.

The plaintiff was not bound to show that his disability was temporary. This might be impossible. It was sufficient for him to show that while continuing a member of this association in active service and good standing, complying with all its laws and regulations and entitled to his full share of the profits and earnings thereof, he became disabled by reason of impairment of his eyesight, and therefore could not pursue his calling, and that for that cause alone his license was revoked. His rights to receive half pay became vested at that time.

As to the by-law passed in April, 1900, I think the remarks of the Supreme Court in Becker v. Berlin Beneficial Society, 144 Pa. 233, are pertinent. "It may be a good by-law as to future cases, but at the time it was passed the plaintiff was something more than a member. He was a creditor whose rights had previously attached, and whose rights cannot be swept away by such a scheme as the by-law."

Judge WILLIAM W. PORTER concurs in the foregoing dissent.