## HARRIS et al. v. NORTHERN BLUE GRASS LAND CO.

(Circuit Court, W. D. Wisconsin. March 2, 1911.)

1. CORPORATIONS (§ 217*)—STOCKHOLDERS—ADDITIONAL LIABILITY—STATUTES —CONSTRUCTION.

Statutes creating additional liability of stockholders are in derogation of the common law and must be strictly construed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 835–844; Dec. Dig. § 217.*]

2. CORPORATIONS (§ 225*)—STOCKHOLDERS—ADDITIONAL LIABILITY—ARTICLES OF INCORPORATION—AMENDMENT.

St. Wis. 1898, § 1771, provides for the organization of corporations for a great number of enumerated purposes, and then adds, "or for any lawful business or purpose whatever, whether similar to the purposes herein mentioned or not," except banking and certain other special subjects. Section 1772 declares generally what the articles of incorporation shall contain relating purely to corporate functions, and then provides that they may contain such other provisions not inconsistent with law as the corporators deem proper to be therein inserted for the interest of the corporation or for the accomplishment of the purposes thereof, including, if desired, the duration of its existence. Held that, where a corporation organized for pecuniary profit adopted articles imposing no additional stockholders' liability, it could not by amendment make the common stockholders liable for an assessment to the extent of an amount equal to their holdings.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. § 864; Dec. Dig. § 225.*]

In Equity. Suit by Harold Harris and another against the Northern Blue Grass Land Company. On petition for an order directing a receiver of defendant corporation to issue an assessment on the holders of the common stock of defendant corporation to pay into court the par value of the stock held by them. Application denied, and petition dismissed.

Richmond, Jackman & Swansen, for receiver Central Wisconsin Trust Co.

Luse, Powell & Luse, for respondents Barter, Bell, Barber, Broadwell, Coon, Gallup, Hagestad, and Haven.

Stringer & Seymour, for respondent Jennings.

SANBORN, District Judge. This is a petition by the receiver of the defendant for an order directing the receiver to issue a call or assessment on the holders of common stock of the Blue Grass Land Company to pay into court the par value of the stock held by them.

The Blue Grass Land Company was incorporated under the Wisconsin statutes July 2, 1906, with a capital of $500,000. The amount of stock now outstanding is $344,666.67. Claims for $404,006.40 have been filed, including some claims for wages for clerks, servants, laborers, and employés. Some $70,000 claims have not been filed, and there are $150,000 in secured debts. The assets available will not exceed $75,000.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

On March 27, 1908, at a meeting of the stockholders of the Blue Grass Company, regularly called and held, the corporate articles were amended, among other things, as follows:

"Art. 2. The capital stock of said corporation shall be $500,000, divided into 5,000 shares of $100 each. Of said capital stock 500 shares amounting to $5,000 shall be preferred stock and 4,500 shares amounting to $450,000 shall be common stock. The preferred and the common stock shall be issued from time to time as may be determined by the board of directors, and in such proportion as such board shall deem best.

"The holders of said preferred stock shall be entitled to receive from the surplus or net profits of said company for each fiscal year a dividend at the rate of seven per cent. per annum, payable annually before any dividend shall be set apart and paid to the holders of the common stock of said company for such year, it being the intention that the common stock shall receive dividends at the same rate after such dividend on preferred stock has been paid, after which all funds set aside for dividends are to be divided equally between the two classes.

"The common stock of said company, though paid for in full, shall be assessable to the extent of one hundred per cent. thereof and each stockholder of the common stock of said company shall be personally liable to the amount of stock held or owned by him for all the debts, obligations and liabilities of said company, and such assessments and liabilities of said common stockholders shall be enforced to such extent and in such manner and at such times as the board of directors of said company shall deem fit and proper."

Three days later this amendment was filed in the office of the Secretary of State, and on April 1, 1908, in the office of the register of deeds of the proper county; thus complying with the law in respect to filing. Several stockholders have filed answers and have made motions in the nature of demurrers to the petition, praying that the same may be dismissed upon the ground that the amendment of the articles was ultra vires.

Section 1772 of the Statutes of 1898 of Wisconsin, in force when this amendment was made, reads as follows:

"In order to form such a corporation the persons desiring so to do shall make, sign and acknowledge written articles containing: (1) A declaration that they associate for the purpose of forming a corporation under these statutes, and of the business or purposes thereof. (2) The name and location of such corporation; but such name shall not contain the names of individuals in the manner in which they are ordinarily used in partnership or business names; no corporate name shall be held illegal because of the omission of the word 'limited.' (3) The capital stock, if any, the number of shares and the amount of each share. (4) The designation of general officers and the number of directors, which shall not be less than three; and the directors may be required to be classified into three classes so that one-third shall hold their offices for one year, one-third for two and one-third for three years; in which case all directors elected subsequent to the first shall hold their offices for three years except when elected or appointed to fill vacancies. (5) The principal duties of the several general officers respectively. (6) The method and conditions upon which members shall be accepted, discharged or expelled; and, in stock corporations, persons holding stock, according to the regulations of the corporation, and they only, shall be members. (7) Such other provisions or articles, if any, not inconsistent with law, as they may deem proper to be therein inserted for the interests of such corporation, or the accomplishment of the purposes thereof, including, if desired, the duration of its existence."

Section 1774 provides as follows:

"Any corporation organized under this chapter may, at any meeting of its members, by a vote of at least the owners of two-thirds of all the stock then

outstanding, * * * unless a greater vote shall be required in its articles, amend its articles of organization so as to: Modify or enlarge its business or purposes. Change its name or location. Increase or diminish its capital stock. Change its officers or its directors. Or provide anything which might have been originally provided in such articles."

Section 1771 provides for the organization of corporations for a great number of enumerated purposes. The enumeration covers about two pages of the Statutes, and the section concludes as follows:

"Or for any lawful business or purpose whatever, whether similar to the purposes herein mentioned or not," except banking and some other special subjects.

Article 11, § 1, of the Constitution provides as follows:

"Corporations without banking powers or privileges may be formed under general laws, but shall not be created by special act, except for municipal purposes, and in cases where, in the judgment of the Legislature, the objects of the corporations cannot be obtained under general laws."

The question presented by the motions is whether the stockholders of the Blue Grass Company had any power to amend the articles so as to create such double individual liability. Prior to the adoption of the statutes of 1898, the concluding clause of section 1771 did not contain the words "whether similar to the purposes herein mentioned or not." Under the former section it was held by the Supreme Court that the words "or for any lawful business or purpose whatever" extended only to things kindred to those specifically authorized by the statute. A corporation whose primary object was to obtain money from its members was held unauthorized, although its articles provided that its purpose was to encourage frugality and economy in its members. State v. International Investment Co., 88 Wis. 512, 60 N. W. 796, 43 Am. St. Rep. 920. The amendment to section 1771 was suggested by the decision above referred to. There is no other statutory provision directly applicable to the case. No prohibition is found in the Statutes; but many acts have been passed by the Legislature in which the ordinary presumption of a corporate organization is involved, namely, that there is no individual liability of stockholders after payment in full of the capital stock. There is, however, a section of the statute providing a double liability of stockholders in favor of clerks, laborers, and servants, and a like provision for double liability of bank stockholders and shareholders in trust companies. There is no allegation in the petition that any creditor of the Blue Grass Company has relied upon the amendment to the articles or the double obligation alleged to have been assumed by the stockholders. The case therefore presents no question of estoppel or contract liability, but is confined to the single question whether the stockholders had power to adopt the amendment in question, unless the amendment in question amounts to a unanimous agreement among the stockholders that the corporation may assess their stock up to its par value for the benefit of its creditors. Judge Thompson, in his work on Corporations, says that it scarcely needs judicial authority to the proposition that stockholders can agree that an assessment can be levied on their stock; that they may voluntarily assess themselves for the betterment of the corpora-

tion, and such assessments are not corporate debts, but are regarded as assets; and that even a statute prohibiting assessments on fully paid stock could not prevent the stockholders themselves from making a valid contract for an additional assessment. 4 Thompson, 4818. However, it seems to be clear that this case presents no question of contract liability because there is no allegation that any creditor knew of or relied upon any such agreement. It is attempted to charge the stockholders solely through the implied power supposed to be given by section 1772, and the proper filing and record of the amendment in the offices of the Secretary of State and register of deeds.

It is elementary that the most characteristic feature of corporate existence is the exemption of the stockholder from liability. A legal entity called a "corporation" is created, and the shareholders simply own interests in the property, evidenced by their share certificates. Statutes creating additional liability are in derogation of the common law and strictly construed.

"To create any individual liability of members for the debt of a corporation, a body politic, created by law, and regarded as a legal being, distinct from that of all the members composing it, and capable of contracting and being contracted with as a person, is a wide departure from established rules of law, founded in consideration of public policy, and depending solely upon provisions of positive law. It is therefore to be construed strictly, and not extend beyond the limits to which it is plainly carried by such provisions of statute." Shaw, C. J., in Gray v. Coffin, 9 Cush. (Mass.) 192; Lowry v. Inman, 46 N. Y. 119; Pollard v. Bailey, 20 Wall. 520, 22 L. Ed. 376; De Haven v. Pratt, 223 Pa. 633, 72 Atl. 1068; Coffin v. Rich, 45 Me. 507, 71 Am. Dec. 559; Flint v. Pierce, 99 Mass. 68, 96 Am. Dec. 691.

One of the questions here presented is whether section 1772, in declaring that the articles shall contain certain specified provisions relating purely to corporate functions, authorizes the adoption of a provision inconsistent with the general theory of corporate liability. In other words, whether the words "such other provisions and articles, if any, not inconsistent with the law, as they may deem proper to be therein inserted, for the interests of such corporation, or the accomplishment of the purposes thereof," do not mean like provisions or articles, and whether the amendment in question is not excluded by the language of paragraph 7, above quoted.

There would seem to be little doubt that such an amendment or like provision in the original articles would be authorized in the case of incorporated clubs, libraries, and other corporations whose primary purpose is not to make money, but require periodic payments, as ruled in Omaha Law Library Ass'n v. Connell, 55 Neb. 396, 75 N. W. 837. The question here presented, however, relates alone to the power of the shareholders of strictly business corporations. In view of the settled rule that a shareholder's liability is inconsistent with the fundamental constitution of moneyed corporations, and that the power to create such an obligation is in derogation of the common law, and so subject to a strict construction, does section 1772 clearly authorize the adoption of the amendment?

Referring to that statute, it will readily be seen that it includes only corporate powers, the elements necessary to locate the company, distinguish it from other corporations, and show clearly that it is not a

partnership. There is nothing to show that the legislative purpose took in the highly inconsistent idea of an additional shareholders' liability. The general idea was the formation of an artificial person, having rights and obligations similar to common-law corporations of like nature. Under such circumstances, the human mind tends to deal with the concrete, to particularize. In view of this tendency, it is common in such statutes to include a general clause to cover like purposes and objects; but such general provisions are universally construed not to cover things inconsistent with the particular things mentioned, and upon which the mind was fixed. In such cases it is regarded as reasonable to conclude that the intention to give a wide range to such a general clause is extremely improbable. If it was the purpose to permit any and all lawful provisions, why particularize? Why not say, after subdivision 3, "such other lawful provisions as they may deem proper to accomplish the object of the corporation"? Section 1772 expressly covers much more than the mere corporate skeleton, and deals exclusively with matters which are strictly corporate in their nature. To introduce an element entirely inconsistent with the ordinary theory and general constitution of a corporation seems entirely beyond the intent. This rule was applied to a situation much less clear than the present one in the International Investment Company decision, above cited. There are many decisions upholding provisions in corporate articles not enumerated in the governing statute; but they generally relate to corporate powers, not to matters inconsistent with the general nature and theory of corporate existence.

The petition should be dismissed.